IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | CRIMINAL NO. 10-790 |
| : | |
| ANTHONY JAMES DEMARCO, III : | |
| MICHAEL RICHARD ROBERTS : | |
| SEAN RYAN MCBRIDE : | |
| ERIC BASCOVE : | |

## SUPPLEMENTAL MEMORANDUM RE: ORDER OF RESTITUTION

**Baylson, J.**                                                                                                       May 2, 2013

Mortgage fraud is one of the defining crimes of the early years of the 21st Century, and the lead defendant in this case; Anthony James DeMarco was one of the worst offenders, causing numerous individuals to lose their homes, as a result of his complex mortgage fraud scheme. Defendant DeMarco was indicted on several counts charging conspiracy, mail fraud, wire fraud, bank fraud and money laundering and pled guilty to the Indictment on March 20, 2012. DeMarco entered an "open" plea, as there was no plea agreement with the government. At DeMarco's sentencing on October 1, 2012, the Court imposed a sentence of 300 months or 25 years of imprisonment, plus an special assessment of $1,000, and a term of supervised release of five years with numerous conditions. The other co-defendants with DeMarco also received substantial prison sentences plus imposition of fines, and supervised release. Imposition of restitution was delayed as to all defendants, as allowed by *Dolan v. U.S.*, 130 S.Ct. 2553 (2010).

Due to the amount of restitution, the Court did not impose a fine.

At the sentencing hearing, several victims of the defendants' scheme appeared and explained, in some detail, how they had lost their homes as a result of defendant's misrepresentations and fraudulent scheme. This testimony, although from only a few victims, was sobering and persuasive in showing how defendants had caused harm to hundreds of individuals. The testimony of the few individuals who appeared at the sentencing could have been repeated by almost all of the victims, because the scheme was applied consistently by DeMarco and his confederates.

1.      Proceedings Re: Restitution

Because of the complex nature of the fraud committed by DeMarco, the government was understandably not prepared to make final calculations and recommendations concerning restitution at that time, and the Court postponed the imposition of restitution to a future date and encouraged counsel to exchange information so that the Court could set as accurate and fair a restitution order as possible.

At the sentencing hearing, although DeMarco's then attorney, Christopher Warren, Esquire, had submitted no objections to the "proof of loss" as calculated in the Presentence Report, defendant DeMarco, at the sentencing hearing, voiced a strong objection to the calculation of the proof of loss and the Presentence Report and indicated that he had disputes about its accuracy.

The Court overruled DeMarco's request for a postponement of sentencing. The Court's Memorandum dated November 7, 2012 (ECF 150) supplemented the reasons stated at the sentencing as the justification for the conclusion of the amount of loss and reason for denial of a continuance.

At DeMarco's request, the Court appointed new counsel, Sandra Adler Gafni, Esquire as of October 5, 2012 (ECF 141).

The Court had entered another Order (ECF 146) dated October 11, 2012 requesting counsel for the government supply to the Court a copy of all communications with defense counsel concerning the proof of loss, including e-mails and transmissions of drafts of the chart presented at the sentencing hearing. The reason for this Order was so the record would show that the government had, in advance of DeMarco's sentencing hearing, provided his counsel with detailed calculations of the proof of loss. The government filed its responsive memo on October 25, 2012 (ECF 150), which detailed the numerous communications the government had made to defense counsel on the issue of the proof of loss.

The dialog between Mr. DeMarco's new counsel and the government concerning restitution continued.

On December 13, 2012, after the government provided a letter dated December 10, 2012 with detailed attachments concerning restitution owed by each defendant in this case, the Court entered an Order that any objections to the government's calculations should be filed no later than January 25, 2013 (ECF 153). This period of time was designed to give defense counsel ample opportunity to submit objections to restitution. The Court encouraged defense counsel to discuss their objections with the Assistant U.S. Attorney before filing objections.

The docket will show that transcripts of various proceedings in this case were filed on January 7th and 11th, 2013 (ECF 154-159).

On January 18, 2013, DeMarco filed a Motion for Extension of Time to File Objections to the Government's Calculations and Requests (ECF 160). The Court granted this extension (ECF 162) and specified that any objections should be filed no later than February 25, 2013.

The Court then scheduled a telephone conference for February 5, 2013 and during that conference call, the Court noted that it was obvious, and not disputed, that the amount of restitution in this case would be in the multi-million dollar range, but defendants had virtually no assets. For this reason, the Court concluded that it would be unconscionable for Court appointed defense counsel to spend any further time trying to "fine tune" the amount of restitution when there was no realistic possibility that DeMarco, or any defendant, was able to make restitution to any of their many victims. The Court also expressed the view that "exactitude" in the amount of restitution owed by defendant was not necessary in this case, in part relying on substantial legal precedent to this effect.

The Court therefore entered an Order on February 7, 2013 (ECF 168) stating that, for these reasons, Court appointed counsel should not expect to receive any compensation for any further work on the amount of restitution.[1]

Numerous exhibits supporting the government's revised calculations for each defendant were filed by the government as to the various defendants on February 28, 2013 (ECF 169-174).

DeMarco's attorney filed oppositions (ECF 175-176). Defendant Roberts joined (ECF 177).

On April 16, 2012, after the Court extended the time for the government to file a response to defendant's objections, the government filed a detailed memorandum supporting its recalculations of the government's contentions as to the amount of restitution owed by DeMarco (ECF 178). The government also filed a supplemental letter brief dated May 1, 2013.

---

[1] The Court should have also, as part of the Order dated February 7, 2013, vacated the Order allowing defendants to file further objections, but failed to do so. In view of all the facts of this case, further objections were irrelevant and in retrospect, the Court should have terminated further filings about restitution at that time. Because of this omission and the fact that defendants did file objections, the Court will allow compensation to defense counsel for work after February 7, 2013, but not after the filing of this Memorandum, at least in this Court.

The Court has reviewed the government's final charts detailing the amount of restitution the government alleges are owed by DeMarco and the other defendants. The Court believes, based in part on the testimony of the agents at the sentencing hearing on October 1, 2012, and the various submissions since that time, that the government's calculations are reasonable, based on the known facts of the case, but cannot state that they are correct to the exact dollar. Because of the nature of the fraud committed by DeMarco and the unavailability of every "piece of paper" that would be essential to definitively and accurately pinpoint the exact amount of restitution due to each and every one of the hundreds of people who are DeMarco's victims, the Court doubts that it is humanly possible for any person, no matter how much time or money was to be spent, to come up with an accurate calculation of restitution owed by DeMarco.

2. DeMarco Ability to Pay

DeMarco has "barely a nickel" to pay restitution to any of his victims.[2]

The DeMarco Presentence Report, based on a certified financial disclosure document submitted by DeMarco, paragraph 151, states that this document revealed six properties which the defendant stated belonged to him [listing various properties in economically depressed areas of Philadelphia].

The Presentence Report continues that "according to electronic data bases", none of these properties are titled in defendant's name. It does not appear that any of these properties are listed on the government's victim list of subject properties.

---

[2] As discussed in detail below, *United States v. Donald Turner*, ___ F.3d ___ 2013, # 12-1420 (May 1, 2013) rejected defendant's argument that the District Court erred by setting restitution without considering the defendant's ability to pay, holding the restitution statute prohibits courts from considering the defendant's economic circumstances. Nonetheless, defendants' inability to pay any restitution is relevant to justify, in this case, this Court's decision that it is a complete waste of time to debate the amount of restitution. Thus, if this be error, it is surely harmless error.

Also according to the Presentence Report, the defendant stated that he is in control of $800,000 worth of real estate through RDI, Inc. [a company allegedly controlled by DeMarco]; has $400,000 via mortgages owed to him; and owns $7,000 in furniture and electronics. The Court observed that, even assuming DeMarco's statements are accurate, these are non-liquid assets and DeMarco, in jail for many years, is in no position to dispose of them for cash.

The Presentence Report further notes that DeMarco bought a Ferrari automobile on March 6, 2009 at a cost of $114,000, which was later traded in for a Mercedes Benz automobile but no details could be found as to the disposition of the Mercedes (paragraph 152).

The Presentence Report further details that according to a credit report, defendant has seven accounts with a balance of $16,962 in collection or charged status and has two judgments against him totaling $10,134 and a federal tax lien in the amount of $12,852 (paragraph 153).

Defendant had filed a Chapter 7 petition in bankruptcy on April 15, 2010 which was dismissed on March 12, 2012. The defendant failed to provide the federal probation officer with federal tax returns.

The other defendants have only nominal assets.

3.  Legal Discussion

The Court previously noted that as to proof of loss, *United States v. O'Malley*, 495 F. App'x 239, 242-43 (3d Cir. 2012) (non-precedential) held the proof of loss calculation need not be exact, and finding the government's calculation of the proof of loss having been adequate.

The statute provides for "mandatory restitution to victims of certain crimes" 18 U.S.C. § 3663(A). It mandates that restitution be imposed, regardless of the defendant's ability to pay. Section (3) provides that in certain cases, the Court need not impose restitution if the number of identifiable victims is so large as to make restitution impractical, or determining complex issues

of fact would complicate or prolong a sentencing process to a degree that the need to provide restitution to any victim is outweighed by the burden on the sentencing process.

Although the Supreme Court had previously held that the loss caused by the conduct of the offense of conviction establishes the outer limit of the amount of restitution due. *Hughey v. United States,* 495 U.S. 411, 420 (1996), the statute's broad definition of "victim" has been recognized as overruling this aspect of *Hughey*. *See e.g., United States v. Brown*, 665 F.3d 1239, 1252 (11th Cir. 2011) (affirming district court's order of restitution for transactions that were not charged in the indictment because they occurred outside the statute of limitations, but which were part of the overall scheme, and noting that Congress amended the definition of "victim" in 18 U.S.C. § 3663 "to overturn in part the Supreme Court's narrow interpretation of victim in *Hughey*; *accord, United States v. Gonzalez*, 647 F.3d 41, 65 (2d Cir. 2011) (noting that *Hughey* has been superseded by statute).

The Court compliments government counsel for showing support for the many victims by detailed work demonstrating the amount of restitution owed by defendants to each victim. See the voluminous exhibits to ECF 178.

Nonetheless, the determination of restitution in this case is indeed "impractical." The statutory language would allow the Court to forego making any findings on restitution. However, because the government was willing to do the work necessary to calculate restitution due to each of the victims, the Court believes it is an appropriate exercise of its discretion to make findings, particularly where the Court believes the government's efforts have led to fairly accurate estimates of restitution due. The Court further believes that defense counsel's efforts to

further complicate this issue are, in view of the defendants' lack of assets, unnecessary and unhelpful.[3]

A series of decisions by the Third Circuit have established that although the appellate court reviews the authority to impose restitution as a plenary matter, the amount is subject to review only for abuse of discretion. *U.S. v.* Turner, supra. *See United States v. Console,* 13 F.3d 641 (3d Cir. 1993), where the Court approved a calculation of restitution as equal to the amount of loss, which in turn equaled the amount that had been paid by an insurance company for each fraudulent claim.

In *United States v. Furst,* 918 F.2d 400 (3d Cir. 1990), the Court indicated that the judge should make specific findings showing the amount of restitution owed to each victim from the loss caused by the offense of conviction. However, *United States v. Seligsohn*, 981 F.2d 1418 (3d Cir. 1992), held absolute precision in the calculation of the amounts of losses is not necessary and that a reasonable approach is satisfactory if that is the only feasible way of determining an appropriate amount of restitution.

The Court notes that although some of the above cases indicate that the Court should take into account the defendant's ability to pay restitution, under current law, restitution is mandatory. *U.S. v. Turner,* supra. In *United States v. Catoggio,* 326 F.3d 323 (2d Cir. 2003), the defendant had pled guilty to one count of racketeering and the District Judge had ordered $80 million in restitution under the Mandatory Victim Resolution Act, supra. On the defendants' appeal, the Court reversed because the victims were unidentified, and remanded for identification of the

---

[3] As this Memorandum and the Order of restitution are being filed, federal courts undergoing a serious budgetary "sequester" that has drastically impacted federal defender services, which come out of the federal courts' Congressionally enacted budget. Thus, numerous individuals charged with crimes and presumed innocent, and/or requesting trials, are being delayed and provided with reduced attorney and support staff time to work on their cases. The Criminal Justice Act does not provide a "bottomless pit" of money to pay defense counsel to spend time working on issues that have no practical effect, particularly when, as in this case, the defendants have pled guilty and have received lengthy prison sentences and restitution is a fanciful dream at best. This Court cannot imagine a more wasteful use of limited CJA funds.

8

victims and their losses. In its decision, the Court noted the problem of a defendant who had insufficient funds to pay restitution, and recognized that the District Court's approach represented a creative approach to a difficult problem. There were thousands of victims and large losses but they were identifiable. The Court also disagreed with many of the defendants' arguments and rejected defense counsel's efforts to spend more money and more time on the issue of restitution when the defendant didn't have any assets to pay restitution. However, the Court felt that the statute required a restitution order particularly when the victims could be identified and thus remanded for that purpose. The government argued against a remand because of the defendants' poverty. The Court stated: "However, the MVRA makes clear that the defendant's ability to pay should not be considered in determining the amount of restitution. Congress evidently wanted to insure that victims be fully compensated for a defendant's past crimes if that defendant unexpectedly inherits money, wins the lottery or otherwise strikes it rich." Id. at 330 (citations omitted).

In this case, this Court has noted at sentencing the inability of the defendants to pay restitution given their current circumstances, including lengthy prison sentences. This statement was only a recognition of reality, which has practical implications. More effort to determine more accurate restitution in this case is about as useful as trying to solve the riddle of the Sphinx. However, as this Court stated at one of the hearings, as in *Castaggio*, it is possible that a defendant has an unknown "rich uncle" who will leave him millions of dollars, or that the defendant will get lucky and "hit the lottery". In the event of such an albeit unlikely event, it is the defendants' victims who should benefit and therefore the Court is entering a restitution order.

Review of Third Circuit jurisprudence on these issues has not found a similar case, with such a massive scheme, where so many victims are owed so much money, yet the defendants

9

have virtually no assets with which to pay restitution. The salutary effect of court ordered restitution may be some solace to some of these victims, and that seems better than ignoring the amount of their losses by over emphasizing the defendants' inability to pay restitution.

4. <u>Government's Response to Defendants' Objections to Restitution</u>

The Court has reviewed the government's Memorandum filed April 16, 2013 (ECF 178) which responds to the objections previously made by defendants. The Court specifically concludes as follows:

(a) Restitution to the sellers should not be reduced for allegedly unpaid rents. DeMarco has insisted that some of the owners who occupied their homes did not pay the rent that was due and DeMarco asserts he is entitled to a reduction in the amount of restitution for this reason. The Court concludes that the government is correct that DeMarco is stopped from prevailing on this issue because his fraud was so overwhelming, and the victims so destitute and despondent, that to give DeMarco credit for these unpaid rents would be adding "salt to any injury". The Court also believes that DeMarco in particular has not sustained any applicable evidentiary burden in showing such a credit should be allowed as a fact, and has not cited any law that he is entitled to such a credit as a matter of law.

The Court agrees with the government's argument at its Brief, pages 7-8 that there is no double counting to DeMarco's detriment.

(b) The Court also finds that the government's use of "net funding figures" is correct, and this is a reasonable method of showing the amount of loss, and thus the amount of restitution.

(c) The Court also agrees with the government that even though the value of collateral may have increased, this does not change the amount due in restitution. Restitution has

to be fixed at a precise period of time, and given the utter improbability that any restitution will ever be paid, it would be a waste of time, and an exercise of futility for the Court to constantly adjust the amount of restitution because of changing market values.

The latest memorandum filed by the government (ECF 178), has made other corrections in an effort to be as reasonably correct as possible. The Court applauds the government's thoroughness and consistency in its approach to this difficult issue, noting that the government's counsel has spent many hours on this issue even though the likelihood of any restitution is so remote.

5. <u>Conclusion</u>

It is now time to call a halt to further filings and for the Court to make a final decision and enter a final order of restitution in the amounts as calculated by the government. The objections by all of the defendants will be overruled. Defendants have been heard, and no more need be said.

The attached Order reflects the Court's findings on the amount of restitution owed by defendants, jointly and severally, to each victim.

**BY THE COURT:**

_____
**MICHAEL M. BAYLSON, U.S.D.J.**

O:\Criminal Cases\10-790 Demarco, US\10cr790.memo.docx